## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| MIKE PADBERG, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.  11-4035 |
| DISH NETWORK, L.L.C., a Colorado limited liability corporation, Serve: R. Stanton Dodge | ) ) ) | JURY TRIAL DEMANDED |
| 9601 S. Meridian Blvd. Englewood, CO 80112 | ) ) ) | |
| And | ) ) | |
| DISH DBS CORPORATION, a Colorado Corporation, Serve: CSC-Lawyers Incorporating Service Company 221 Bolivar Jefferson City, MO  65101 | ) ) ) ) ) ) | |
| Defendant. | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff Mike Padberg, individually and on behalf of all others similarly situated, and for

his Complaint against Defendant DISH Network, L.L.C., and DISH DBS Corporation

(collectively referred to herein as "DISH"), states as follows:

### Nature of the Action

1.      In this action, Plaintiffs, on behalf of themselves and others similarly situated,

seek actual damages and declaratory relief arising out of DISH Network, LLC's:

      a.      failure to provide satellite television programming to Plaintiffs and the putative

              class for the month of October 2010, which Plaintiffs and the putative class

selected, purchased and paid DISH for, and which DISH contractually agreed to provide; and

b.     DISH's refusal to provide Plaintiffs and the putative class any refund, rebate or reimbursement whatsoever of the monthly premiums paid to DISH for the deleted programming.

In response, DISH claims that its onerous, opaque and illusory customer contracts entitle DISH to drop or delete any and all programming selected, purchased and paid for by its customers without providing the customers any refund or other reimbursement whatsoever.  DISH claims, further, that, under these contracts, DISH's customers are required to continue to pay DISH monthly premiums for the deleted programming and may not cancel their contracts without the payment of hefty cancellation fees to DISH.

2.     DISH's actions are unfair, unlawful and have damaged thousands of individuals nationwide.  Plaintiff bring this action on his own behalf and as a representative of all DISH subscribers in Missouri and throughout the United States who paid for DISH satellite television packages which included FOX Network's regional sports and other programming during the month of October, 2010.

3.      The collection and retention by DISH of Plaintiffs' and the Class' payments for services Plaintiff and the Class did not receive, including FOX Network's regional sports, without any discount, rebate or refund, gives rise to claims by Plaintiff and the class for breach of the parties' contracts, breach of the duty of good faith and fair dealing, unjust enrichment and violation of consumer protection laws.

4.     Plaintiff seek to recover for themselves and the putative class:

Case 2:11-cv-04035-NKL   Document 1   Filed 01/25/11   Page 2 of 27

a. actual damages in the amount of the value of the satellite television programming contracted and paid for by Plaintiff and the Class but which DISH failed to provide to Plaintiff and the Class;

b. injunctive relief to allow Plaintiff and the Class the option of canceling their contract with DISH without penalty or cancellation fee;

c. punitive damages for DISH's wanton and willful disregard of the rights of Plaintiff and the Class;

d. declaratory relief that all or certain portions of DISH's purported Customer Agreement and Residential Customer Agreement are illusory, unconscionable, lack mutuality, and are void and severable; and

e. Plaintiff's and the Class' costs, expenses and attorneys' fees incurred in this action.

## The Parties

5. Plaintiff Mike Padberg is a citizen of the State of Missouri, residing in Cole County, Missouri. Plaintiff is an individual consumer who has been a DISH customer since approximately September, 2004 and purchased from DISH a satellite television package that provided access to FOX Sports Midwest and other television channels.

6. Defendant DISH Network, L.L.C. is a Colorado limited liability company, with its principal place of business at 9601 South Meridian Blvd., Englewood, Colorado.

7. Defendant DISH DBS Corporation is a Colorado corporation registered with the Missouri Secretary of State to do business in Missouri. Upon information and belief, this defendant provided the DISH satellite television services to Missouri customers.

## Jurisdiction and Venue

3

8. This Court has personal jurisdiction over DISH because DISH conducts business in the State of Missouri including, but not limited to, the marketing and sale of satellite television access packages.

9. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2) of the Class Action Fairness Act of 2005, because Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, Plaintiff and certain members of the Plaintiff class are citizens of different states than Defendant and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claim occurred in this District, as Plaintiff is a resident of Cole County, Missouri, which is located in the Central Division of the Western District of Missouri.

**DISH's Advertising And Sale Of Regional Sports Television Programming**

11. DISH advertises and sells satellite television access packages to consumers nationwide, including "America's Top 120", "America's Top 120+", "America's Top 200", "America's Top 250", and "America's Everything Pak" (the "Packages").

12. With the exception of "America's Top 120", the Packages include "regional sports programming."

13. DISH's website, dishnetwork.com, presently advertises that for $24.99 per month for one year (regular $39.99/month, two year subscription required), subscribers can receive "America's Top 120", as follows:

**Over 120 Favorite Channels**

4

> An exceptional digital TV package sure to please the entire family. Enjoy CNN, Discovery Channel, Disney Channel and ESPN with America's Top 120.

dishnetwork.com.

14.     For an additional $5.00 per month, subscribers can receive DISH's "America's Top 120+" Package, which consists of the same programming as "America's Top 120", ***plus regional sports programming***:

> **Over 120 Favorite Channels + Local Sports Network(s)**
>
> Includes all of the great satellite programming in our America's Top 120 package ***with the addition of your Local Sports Network(s). You won't miss out on your regional teams' action with this package***.

http://dishnetwork.com (emphasis in bold italics added).  A sample of DISH's advertisements is attached hereto as Exhibit 1.

15.     In most areas of the country, DISH's regional sports network programming consists of at least one of FOX Network's 19 regional sports channels.  For instance, in Missouri, the "Local Sports Network" purchased by subscribers from DISH is FOX Sports Midwest, which is the primary provider of St. Louis Cardinals Baseball and St. Louis Blues Hockey, and provides programming for regional collegiate sports, such as University of Missouri Football.  In other areas of the country, DISH subscribers purchase Local Sports Network programming from one of 18 other regional FOX Network sports programs, such as FOX Sports West (west coast states), FOX Sports North (upper Midwest states), and FOX Sports Southwest (southwestern states other than Arizona).  The 19 FOX Network's regional sports networks are hereinafter collectively referred to as "FSN".

5

16.     DISH's advertisements do **not** state or disclose that DISH may, at any time during the subscription term, delete or change any of the programming paid for by the consumer, or change the pricing of such programming, without any recourse or refund to the consumer.

**Plaintiffs' Order and Confirmation**

17.     On or about September, 2004, Plaintiff ordered one of DISH's satellite television package.  The package included regional sports programming from FSN.

18.     Prior to installation of DISH equipment and services, DISH confirmed with Plaintiff who would be the account holder, account number, service address, programming package selected (including a summary of the programming), equipment and date of installation.

19.     The confirmation did not state or disclose that DISH may, at any time during the subscription term, delete or change any of the programming paid for by Plaintiff and the Class, or change the pricing of such programming, without any recourse or refund to Plaintiffs and the Class.

**DISH's Standardized Customer Agreement**

20.     On the installation date, DISH's installers (the "Installers") installed the DISH equipment at Plaintiff's residence.

21.     Following installation, Plaintiff's signed documents presented by the installer. Upon information and belief, Plaintiff signed: (a) a Digital Home Advantage Customer Agreement (the "Customer Agreement"); and (b) a DISH Network Service L.L.C. Service Agreement (the "Service Agreement"), which are form documents DISH presents to all of their customers.   Copies of examples are attached  hereto respectively as Exhibits 2 and 3.

22.     The Customer and Service Agreements are each standardized, two-page documents in Times New Roman-style, approximately 12 font.

6

23.     The Customer and Service Agreements are non-negotiable.

24.     The Customer Agreement provides that the customer agrees to pay for the programming that the customer selects:

> You [the customer] agree to pay monthly by the due date **for the programming you select** and for all applicable fees.

Ex. 2, p. 2 (emphasis added).

25.     Pursuant to the Customer Agreement, if a customer cancels a contract before its term has expired, DISH requires a cancellation fee per month for each month remaining on the contract.  Ex. 2, p. 1.

26.     The Customer Agreement provides a general notification that DISH "reserve[s] the right to change prices, packages, and programming at any time, including without limitation, during any term commitment to which you have agreed."  Ex. 2, p. 1.  This provision suggests that prices, programming, and packages may be changed for future customers (i.e. a future customer may be charged less for the same or more programming).  Moreover, the provision does **not** state that DISH may change **"your"** pricing and programming:

> ***We reserve the right to change prices, packages and programming at any time, including without limitation, during any term commitment to which you have agreed.

(emphasis added).

27.     In contrast to this general notification, the following sentence of the Customer Agreement specifically identifies circumstances under which DISH may change **"your"** (the customer's) payment obligations:

> ***We reserve the right to change **your** payment terms if **you** fail to make payments by your payment due date.

Ex. 2, p. 1.

28.     The Customer Agreement and the Service Agreement do **not** state or disclose that DISH may, at any time during the subscription term, delete or change any of the programming paid for by Plaintiff, or change the pricing of such programming, without any recourse or refund to Plaintiff.

## The RCA

29.     Following installation, the customer receives a 156-page Satellite Receiver User's Guide that includes 12 Chapters dealing with the setup and use of the satellite equipment.  The Chapters each are identified on the cover of the User's Guide and in the Guide Overview and include, for instance, "Receiver and Remote Control", Finding Programs to Watch", "Record Future Programs", and "Connections and Setup".  The Chapters themselves appear in Arial 10-12 point font and use lists and spacing to make it easier to read.

30.     Buried in the back of the User's Guide, in the "Appendix", on pages 146-151, DISH places a 6-page, single-spaced document, in 8.5 font, entitled Residential Customer Agreement ("RCA").  A copy of the RCA is attached hereto as Exhibit 4.

31.     DISH does not require that customers execute the RCA either prior to installation, or at any time thereafter, and upon information and belief, the RCA is not even provided to customers prior to installation.

32.     The RCA, by its terms, is standardized and non-negotiable, providing: "No salesperson, installer, customer service representative, authorized retailer, or other similarly situated individual is authorized to change the terms and conditions of this Agreement." Ex. 4, p. 151 § 9(H).

33.     The RCA contains terms and conditions materially different from, and not found in, the Confirmation, Customer Agreement and Service Agreement.  These additional terms and

8

conditions purport to relieve DISH from any obligation whatsoever to provide satellite

programming selected and paid for, in advance, by the customer, or to perform any other

obligation under the Confirmation, Customer Agreement, and Service Agreement.

34.     For instance, on page 147 of the User's Guide, § 1(G) of the RCA, states in 8.5

type, that DISH may, at any time, in DISH's sole discretion, unilaterally delete any and all

programming from the customer's subscription agreement and/or change the prices and fees of

its services, without any recourse whatsoever to the customer, including any refund:

> We reserve the right to add, delete, rearrange, and/or change any and all programming, programming packages, and other Services that we offer, and our prices and fees related to such programming, programming packages and Services at any time, including without limitation during any term agreement period to which you have agreed under the terms and conditions of any other agreement with DISH Network. If a change affects you, we will provide you notice of such changes and its effective date. In the event that we delete, rearrange or change any programming, programming packages or other Services, you understand and agree that we have no obligation to replace or supplement any programming, programming packages or other Services previously offered that have been deleted, rearranged or otherwise changed. You further understand and agree that you will not be entitled to any refund because of a deletion, rearrangement or change in the contents of any programming, programming packages, or other Services previously offered.

Ex. 4, p. 147 § 1(G).

35.     On page 150 of the User's Guide, § 7 of the RCA purports to limit DISH's

liability for service interruptions which DISH does **not** control, specifically, "for any

interruptions in service or for any delay or failure to perform, including, without limitation if

such interruption or delay or failure to perform arises in connection with the termination or

suspension of DISH Network's access to all or any portion of services . . . ." Ex. 4. p. 150 §

7(A). Unlike §1(G), § 7 only disclaims liability for special, indirect, incidental or consequential

damages and does **not** disclaim liability for compensatory damages such as refund claims:

> IN NO EVENT SHALL WE, OUR THIRD PARTY BILLING AGENTS, OR ANY OF OUR OR THEIR AFFILIATES HAVE ANY LIABILITY FOR SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR RELATING TO DISH NETWORK EQUIPMENT OR ANY OTHER EQUIPMENT OR RESULTING FROM OUR FURNISHING OR FAILURE TO FURNISH ANY SERVICES OR EQUIPMENT TO YOU, OR FROM ANY FAULT, FAILURE, DEFICIENCY OR DEFECT IN SERVICES OR EQUIPMENT FURNISHED TO YOU.

Ex. 4, p. 150 § 7(D).

9

36.     On page 151 of the User's Guide, § 9 of the RCA states that any conflict between

the terms and conditions of the Customer Agreement and the RCA are to be resolved in favor of

the Customer Agreement:

> In the event of any conflict or inconsistency between the terms and conditions of this Agreement [RCA] and any customer agreement(s) applicable to the Customer(s) pursuant to which you are receiving Services and/or Equipment, the terms and conditions of such customer agreement(s) shall be controlling.

Ex. 4, p. 151 § 9(H).

37.     In the very next sentence, however, the RCA states that any ambiguity between

the Customer Agreement and RCA shall be interpreted and resolved solely and exclusively by

DISH:

> In the event of any ambiguity between the terms and conditions of this Agreement [RCA] and any customer agreement(s) applicable to the Customer(s) pursuant to which you are receiving Services and/or Equipment, DISH Network shall have the sole and exclusive authority to interpret and/or make a final determination in its sole discretion concerning any issue arising from such ambiguity.

Ex. 4, p. 151 § 9(H).

38.     The RCA recites that the Agreement "shall be governed by the laws of the State

of Colorado.

### DISH's Retention Of Monies For Programming Plaintiffs And The Class Paid For But Did Not Receive

39.     Pursuant to the Confirmation and Customer Agreement, Plaintiff and the Class

selected, purchased and paid DISH for satellite programming which included FSN regional

sports programming.

40.     From October 1, 2010 to October 29, 2010, DISH failed to provide Plaintiff and

the Class FSN regional sports programming and, further, failed to provide Plaintiffs and the

Class any rebate, refund or reduction in DISH's monthly fees to Plaintiff and the Class.

41.     The Service Agreement, Customer Agreement and RCA are illusory, lack

mutuality and are unenforceable.  In the alternative, all portions of the Service Agreement,

Customer Agreement and RCA that purport to allow DISH to modify or limit programming at-will, including those referenced above, are illusory, lack mutuality, are unenforceable and should be severed.

## Class Action Allegations

42. Plaintiff bring this action pursuant to Federal Rule of Civil Procedure 23 on their own behalf and on behalf of a nationwide Class (the "National Class") defined as:

> All DISH subscribers in the United States who paid for DISH programming, including FSN regional sports programming, for the period October 1, 2010 through October 29, 2010 and did not receive FSN programming during the period October 1 through October 29, 2010.

43. For purposes of the claims set forth below brought pursuant to the Missouri Merchandising Practices Act, Chapter 407, RSMo, *et seq.*, Plaintiffs also assert a subclass (the "Subclass)" defined as:

> All citizens of the state of Missouri who subscribed and paid for DISH programming including FSN for the period between October 1, 2010 and October 29, 2010 and did not receive FSN programming during the period October 1 through October 29, 2010.[1]

44. Excluded from the Class are affiliates, predecessors, successors, officers, directors, agents, servants, or employees of DISH, and the immediate family members of such persons. Also excluded is any trial judge who may preside over this action, court personnel and their family members and any juror assigned to this action.

45. Plaintiff is a member of the Class, which he seeks to represent.

46. The Class consists of thousands of individuals and therefore is so numerous that joinder is impracticable.

47. Plaintiff's claims are typical of the claims of the Class because Plaintiff and all

---

[1] Unless otherwise noted, the National Class and Subclass are collectively referred to as the "Class".

members of the class have sustained damages as a result of DISH charging a monthly fee for satellite television access which it did not provide.

48. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including but not limited to the following:

     a.     whether DISH's RCA, or provisions thereof, is illusory, lacks mutuality, or is unconscionable and severable;

     b.     whether DISH's Customer Agreement, or provisions thereof, is illusory lacks mutuality, or is unconscionable and severable;

     c.     whether DISH is entitled to delete or change the programming and/or change the pricing of a customer's existing subscription agreement without any recourse or refund to the customer;

     d.     whether DISH's failure to provide Plaintiff and the Class satellite television programming which Plaintiff and the Class selected and paid for, or any refund, rebate, or reimbursement for such programming, constitutes a breach of contract under Colorado law;

     e.     whether DISH's failure to provide Plaintiff and the Class satellite television programming which Plaintiff and the Class selected and paid for, or any refund, rebate, or reimbursement for such programming constitutes a breach of the covenant of good faith and fair dealing under Colorado law;

     f.     whether Section 7 of DISH's RCA disclaims liability for compensatory damages, including refunds or rebates, for suspensions in services;

g.      whether DISH has been unjustly enriched by its retention of monthly fees charged to Plaintiffs and the Class for satellite television programming which Plaintiffs and the Class selected, paid for, and did not receive;

h.      whether DISH's failure to provide Plaintiff and the Class satellite television programming which Plaintiff and the Class selected and paid for constitutes a violation of the Colorado Consumer Protection Act;

i.      whether DISH's failure to provide Plaintiff and the Class satellite television programming which Plaintiff and the Class selected and paid for constitutes a violation of the Missouri Merchandising Practices Act, RSMO 407.010, *et seq.*;

j.      whether DISH's failure to disclose to Plaintiff and the Class the time remaining on its transmission contract with FSN constitutes a violation of the Colorado Consumer Protection Act;

k.      whether DISH's failure to disclose to Plaintiff and the Class the time remaining on its transmission contract with FOX constitutes a violation of the Missouri Merchandising Practices Act;

l.      whether declaratory relief is warranted;

m.      whether DISH should be enjoined from collecting cancellation fees from Plaintiff and the Class after September 30, 2010 for satellite television programming that it Plaintiff and the Class selected, paid for and did not receive; and

n.      whether Colorado law applies to all claims asserted in this case.

13

49.     All common questions are able to be resolved through the same factual occurrences as specifically and/or generally alleged herein.

50.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff has no claims antagonistic to those of the Class.  Plaintiff retained competent and experienced counsel in complex class actions, mass tort and products liability litigation.  Counsel is committed to the vigorous prosecution of this action.

51.     The prosecution of separate actions by the Plaintiff and individual members of the Class against DISH would create a risk of inconsistent or varying adjudications on the common issues of law and fact related to this action.

52.     A class action is appropriate and superior method for the fair and efficient adjudication of this controversy.

53.     The expense and burden of litigation would substantially impair the ability of the Class members to pursue individual cases to protect their rights.  In the absence of a class action, DISH will retain the benefits of its wrongdoing and will continue to collect monthly fees and cancellation fees improperly.

54.     Class certification is also appropriate because DISH has acted and/or refused to act on grounds generally applicable to Plaintiffs and the Class, thereby warranting appropriate injunctive and/or declaratory relief.

## COUNT I - Breach of Contract

55.     Plaintiff hereby incorporates and adopts by reference each and every allegation set forth above.

56.     DISH entered into a form Customer Agreement with Plaintiff (and the other members of the Class) pursuant to which DISH agreed to provide satellite television

programming, including FSN, in return for which Plaintiff and members of the Class agreed "to pay monthly by the payment due date for the programming [the customer] select[s], and for all applicable fees." Ex. 2, p. 2.

57. DISH charged and retained monies from Plaintiff and the Class for satellite television programming which DISH did not provide to Plaintiff and the Class during the period October 1, 2010 through October 29, 2010.

58. In so doing, DISH breached its contract with Plaintiff and the Class.

59. As a result of the breach of contract, Plaintiff and members of the Class were damaged in the amount equal to the value of the programming advertised and sold by DISH to Plaintiff and the Class, but which DISH did not provide to Plaintiff and the Class.

### COUNT II
### Breach of Covenant of Good Faith And Fair Dealing

60. Plaintiff hereby incorporates and adopts by reference each and every allegation set forth above.

61. DISH's contracts with the Plaintiff and the Class include the implied covenant of good faith and fair dealing in which DISH owed Plaintiff and the Class the duty not to charge and retain monies from Plaintiff and the Class for goods and services which DISH did not provide to Plaintiff and the Class.

62. DISH breached its duty of good faith and fair dealing to the Plaintiff and the Class by unfairly charging and retaining monies from Plaintiff and the Class for satellite television programming that DISH did not provide to Plaintiff and the Class.

63. DISH's breach of its covenant of good faith and fair dealing have caused the Plaintiff and the Class economic damages.

### COUNT III - Unjust Enrichment

15

64. Plaintiff hereby incorporates and adopts by reference each and every allegation set forth above.

65. DISH charged and retained, without rebate, reduction or refund, monies paid by Plaintiff and the Class for FSN programming for the month of October 2010, that DISH did not provide to Plaintiff and the Class.

66. DISH collected these monthly fees to the detriment of Plaintiff and the Class.

67. DISH retains funds that in good conscience and equity it should not be entitled to retain.

68. As a result, DISH has been unjustly enriched at the expense of Plaintiff and the Class.

69. Accordingly, Plaintiff and the Class seek full disgorgement and restitution of the amounts DISH has retained as a result of the unlawful and/or wrongful conduct alleged herein.


## COUNT IV – Declaratory Judgment

70. Plaintiff hereby incorporates and adopts by reference each and every allegation set forth above.

71. In addition, and as an alternative, to the relief sought herein, Plaintiff seeks a declaration from the Court regarding the rights, obligations and duties of DISH, Plaintiff and the Class pursuant to the terms of the standardized DISH contracts.

72. Specifically, Plaintiff requests that the Court declare as follows:

    a. the RCA is illusory, lacks mutuality, and is unconscionable;

    b. portions of the RCA are illusory, lack mutuality, are unenforceable and severable;

c.  the Customer Agreement is illusory lacks mutuality, or is unconscionable;

d.  portions of the Customer Agreement are illusory, lack mutuality, are unenforceable and severable;

e.  the Service Agreement is illusory lacks mutuality, or is unconscionable;

f.  portions of the Service Agreement are illusory, lack mutuality, are unenforceable and severable;

g.  DISH is not entitled to delete or change the programming selected and paid for by Plaintiff without providing any refund, rebate or reimbursement to Plaintiff;

h.  DISH's failure to provide Plaintiff and the Class satellite television programming which Plaintiff and the Class selected and paid for, or any refund, rebate, or reimbursement for such programming, constitutes a breach of contract under Colorado law;

i.  DISH's failure to provide Plaintiff and the Class satellite television programming which Plaintiff and the Class selected and paid for, or any refund, rebate, or reimbursement for such programming constitutes a breach of the covenant of good faith and fair dealing under Colorado law;

j.  Section 7 of DISH's RCA does not disclaim liability for compensatory damages, including refunds or rebates, for suspensions in services;

k.  DISH has been unjustly enriched by its retention of monthly fees charged to Plaintiff and the Class for satellite television programming which Plaintiff and the Class selected, paid for, and did not receive;

l.     DISH's failure to provide Plaintiff and the Class satellite television programming which Plaintiff and the Class selected and paid for constitutes a violation of the Colorado Consumer Protection Act;

m.     DISH's failure to provide Plaintiff and the Class satellite television programming which Plaintiff and the Class selected and paid for constitutes a violation of the Missouri Merchandising Practices Act, RSMO 407.010, *et seq.*;

n.     DISH's failure to disclose to Plaintiff and the Class the time remaining on its transmission contract with FSN constitutes a violation of the Colorado Consumer Protection Act;

o.     DISH's failure to disclose to Plaintiff and the Subclass the time remaining on its transmission contract with FOX constitutes a violation of the Missouri Merchandising Practices Act;

p.     Plaintiff and the Class are entitled to compensatory damages in the form of a refund of sums paid to DISH for programming selected and paid for by Plaintiffs and the Class but which DISH failed to provide, together with interest thereon; and

q.     Plaintiff and the Class are entitled to terminate their DISH contract without penalty.

### COUNT V - Colorado Consumer Protection Act

73.     Plaintiff hereby incorporates and adopts by reference each and every allegation set forth above.

74.     The Colorado Consumer Protection Act, CRS 6-1-101 *et seq.*, prohibits unfair methods of competition and unfair or deceptive acts or practices.

75.     DISH marketed and advertised its satellite programming to Plaintiff and the Class as including specific programming, including FSN regional sports programming, for an advertised monthly price.

76.     DISH's advertisements and marketing materials failed to disclose to Plaintiff and the Class that DISH claimed the right to delete or change the programming purchased by Plaintiff and the Class, or to change the pricing of such programming, without any recourse or refund to Plaintiff and the Class.

77.     Accordingly, DISH advertised and marketed its satellite programming, including FSN regional sports programming, to consumers with the intent not to sell the packages as advertised, in violation of CRS 6-1-105(1)(i).

78.     Further, DISH's advertisements and marketing failed to disclose material information concerning DISH's satellite programming advertised and sold to Plaintiff and the Class, including Dish's claimed right to delete or change the programming advertised and sold to Plaintiff and the Class, or to change the pricing of such programming, without any recourse or refund to Plaintiff and the Class, all of which was known to DISH at the time of such advertisement or sale to Plaintiff and the Class, in violation of CRS 6-1-105(1)(l) and (1)(u).

79.     DISH employed "bait and switch" advertising, in violation of CRS 6-1-105(n)(VII) because it advertised and marketed its satellite programming, including FSN regional sports, for a set monthly price, and now claims to have sold these satellite services on terms other than those advertised, which was accompanied by a failure to make deliveries of the services within a reasonable time and to make a refund therefor.

80.     DISH failed to disclose in its advertising, marketing, and sales that its transmission contract with FSN would expire in October 2010 and potentially cause suspension in FSN regional sports programming.

81.     In failing to disclose to Plaintiff and members of the Class that its transmission contract with FSN would expire in October 2010, and the potential consequences of such expiration, DISH employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and omitted, concealed and suppressed material information and failed to inform Plaintiff and the Class of a material fact in connection with its provision of services that was known at the time of advertising, marketing, and selling the services, in violation of CRS 6-1-105(1)(u).

82.     DISH's charging Plaintiff and members of the Class for satellite television programming that they did not receive constituted an unfair practice in connection with the sale of merchandise.

83.     In charging and retaining monies from Plaintiff and the Class for satellite television programming that they did not receive, DISH employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and omitted, concealed and suppressed material information and failed to inform Plaintiff and the Class of a material fact in connection with its provision of services, in violation of CRS 6-1-105(1)(u).

84.     After DISH charged Plaintiff and members of the Class for programming they did not receive, it refused to allow Plaintiff and members of the Class to cancel their contracts with DISH without imposition of a cancellation fee.

85.     DISH's refusal to allow Plaintiff and members of the Class to cancel their contracts with DISH without imposition of a cancellation fee constituted an unfair practice in connection with the sale of merchandise.

86.     DISH's unfair and deceptive trade practices have significantly impacted the public, as well as actual and potential subscribers of DISH's satellite programming services, including the Plaintiff and the Class members.

87.     As a direct and proximate result of DISH's conduct set forth above, Plaintiff and the Class have suffered injuries in fact including but not limited to, substantial and ascertainable loss of money and/or property and other damages resulting from DISH's failure to provide reimbursement for the programming that was not provided by DISH.

88.     Plaintiff has been forced to hire attorneys to enforce their rights, and have incurred attorney's fees as a result thereof.

**COUNT VI - Damages Under the Missouri Merchandising Practices Act**

89.     Plaintiff hereby incorporates and adopts by reference each and every allegation set forth above.

90.     The Missouri Merchandising Practices Act, Chapter 407, RSMo, *et seq.*, was enacted to prohibit, and protect persons from, deceptive, fraudulent and unfair practices.

91.     Section 407.020, RSMo provides in relevant part: "The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared unlawful."

92.     The acts and practices engaged in by DISH, as set forth herein, constitute unfair, deceptive and/or fraudulent business practices in violation of Chapter 407, *et. seq.*, RSMo.

93.     In charging Plaintiff and members of the Subclass for satellite television programming that they did not receive, DISH employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and omitted, concealed and suppressed material information and failed to inform Plaintiff and the Subclass of a material fact in connection with the sale of merchandise in violation of Section 407.020, RSMo.

94.     DISH markets, advertises and sells its Packages knowing when its transmission contracts with various service providers are set to expire.

95.     DISH knew that its transmission contract with FSN would expire in October 2010.

96.     DISH failed to disclose in its advertising, marketing, and sales that its transmission contract with FOX Network would expire in October 2010 and potentially cause a disruption or suspension in programming, such as FSN.

97.     In failing to disclose to Plaintiff and members of the Subclass that its transmission contract with FOX Network would expire in October 2010, and the consequences of such expiration, DISH employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and omitted, concealed and suppressed material information and failed to inform Plaintiff and the Class of a material fact in connection with the sale of merchandise in violation of Section 407.020, RSMo.

98.     After DISH charged Plaintiff and members of the Subclass for programming they did not receive, it refused to allow Plaintiff and members of the Subclass to cancel their contracts with DISH without imposition of a cancellation fee.

99. DISH's refusal to allow Plaintiff and members of the Subclass to cancel their contracts with DISH without imposition of a cancellation fee constituted an unfair practice in connection with the sale of merchandise in Section 407.020, RSMo.

100. The aforesaid unfair and deceptive acts and practices occurred in the course of conduct involving trade or commerce.

101. The aforesaid violations of the Missouri Merchandising Practices Act have caused Plaintiffs and the Subclass substantial and ascertainable loss of money and/or property and other damages.

102. DISH's conduct as aforesaid was wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiff and others similarly situated and, therefore, warrants the imposition of punitive damages.

103. Plaintiff has been forced to hire attorneys to enforce their rights under the Missouri Merchandising Practices Act.

## COUNT VII
## Injunctive Relief

104. Plaintiff hereby incorporates and adopts by reference each and every allegation set forth above.

105. DISH continues to retain payment made by Plaintiff and other members of the Subclass for satellite television programming that they did not receive.

106. DISH refuses to allow Plaintiff and other members of the Subclass to cancel their contacts with DISH without payment of a cancellation fee.

107. DISH's charging of Plaintiff and other members of the Subclass monthly fees for satellite television programming that they did not receive, DISH's refusal to allow Plaintiff and members of the Subclass to cancel their contracts with DISH without imposition of a

23

cancellation fee, and DISH's failure to disclose to Plaintiff and members of the Subclass that its transmission contract with FOX Network would expire in October 2010 and the consequences of such expiration constitutes violations of Chapter 407, RSMo., as pleaded in Count VI above, and other applicable law

108.    Applicable law, including RSMO 407.025, permits the Court to enter injunctive relief to prevent DISH's continued violation of the law by: (A) continuing to charge Plaintiff and other members of the Subclass monthly fees for satellite television programming that they did not receive; (B) refusing to allow Plaintiff and members of the Subclass to cancel their contract with DISH without imposition of a cancellation fee; and (C) continuing to advertise, market, and sell DISH subscription contracts without disclosing relevant dates that DISH transmission contracts with programming providers will terminate and the consequences of such termination.

WHEREFORE, Plaintiff, individually and on behalf of the Class and Subclass, seeks the following relief:

A.      certification of the proposed National Class and Subclass;

B.      declaratory relief that DISH is not entitled to delete or change the programming selected and paid for by Plaintiff and the class without providing any refund, rebate or reimbursement to Plaintiff and the class, and for all other declaratory relief specifically requested in Count IV above;

C.      individual actual damages for Plaintiff in the amount of the value of the satellite television programming contracted and paid for by Plaintiff but which programming Plaintiff did not receive from DISH;

Case 2:11-cv-04035-NKL   Document 1   Filed 01/25/11   Page 24 of 27

D. aggregate actual damages for the National Class in the amount of the value of the satellite television programming contracted and paid for by the National Class but which programming the National Class did not receive from DISH;

E. aggregate actual damages for the Subclass in the amount of the value of the satellite television programming contracted and paid for by the Subclass but which programming the Subclass did not receive from DISH;

F. disgorgement of all funds collected by DISH as "monthly fees" for satellite television programming contracted and paid for by Plaintiffs and the National Class but which Plaintiff and the National Class did not receive from DISH, and the return of such funds to Plaintiff and members of the National Class;

G. punitive damages for the Subclass under the Missouri Merchandising Practices Act in an amount to punish DISH's egregious conduct as set forth above and to deter DISH and others from engaging in similar conduct;

H. this Court's Order enjoining DISH's collection of "monthly fees" for satellite television programming which Plaintiff and the National Class paid for but did not receive from DISH;

I. this Court's Order enjoining DISH's collection of "cancellation fees" from members of the Class;

J. this Court's Order enjoining DISH's continued advertising, marketing, and sales of DISH subscription packages without disclosure of relevant dates that DISH transmission contracts with programming providers will terminate and the consequences of such termination;

K. attorneys' fees and those costs as are available under the law or equity;

L.       prejudgment interest in the statutory amount; and

M.      such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues stated herein, and all issues so triable.

Respectfully submitted,


_____/s/Matthew A. Clement_____
Matthew A. Clement  MO Bar #43833
Timothy W. Van Ronzelen MO Bar #44382
Kari A. Schulte      Mo Bar #57739
COOK, VETTER, DOERHOFF & LANDWEHR, P.C.
231 Madison
Jefferson City, Missouri 65101
573/635-7977
573/635-7414 (facsimile)
mclement@cvdl.net
tvanronzelen@cvdl.net
kschulte@cvdl.net


Robert A. Horn       MO 28176
Joseph A. Kronawitter     MO 49280
HORN AYLWARD & BANDY, LLC
2600 Grand Blvd, Suite 1100
Kansas City, MO 64108
(816) 421-0700 - Telephone
(816) 421-0899- Facsimile
rhorn@hab-law.com
jkronawitter@hab-law.com

**GOLDENBERG HELLER ANTOGNOLI & ROWLAND, P.C**

Mark C. Goldenberg   MO Bar #41355
Thomas P. Rosenfeld  MO Bar #35305
2227 South State Route 157
Edwardsville, IL 62025
618-656-5150
618-656-6230 (fax)
mark@ghalaw.com
tom@ghalaw.com


**BARTIMUS, FRICKLETON, ROBERTSON & GORNY, P.C.**

Edward D. Robertson, Jr. Mo Bar  #27183
Mary D. Winter        Mo Bar #38328
715 Swifts Highway
Jefferson City, Mo. 65109
573-659-4454
573-659-4460 (fax)
chiprob@earthlink.net
marywinter@earthlink.net


ATTORNEYS FOR PLAINTIFFS