THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MIKE PADBERG, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DISH NETWORK LLC,<br><br>Defendant. | Case No. 11-04035-CV-C-NKL |

**ORDER**

Pending before the Court is Defendant Dish Network's motion to dismiss Plaintiff Mike Padberg's claims arising out of an interruption of his satellite television service [Doc. # 18]. For the following reasons, the Court DENIES the motion as to Counts I, II and VII, and GRANTS it as to Counts III, IV, V and VI.

**I.     Background**

Defendant Dish Network, L.L.C., is a Colorado corporation that markets and sells satellite television nationwide, generally in packages of over 100 channels and for a monthly fee. Plaintiff Mike Padberg is a Missouri resident who ordered one of Dish Network's satellite television packages in September 2004.

Padberg alleges that immediately after Dish Network installed satellite equipment at Padberg's residence, Dish Network presented him with two form contracts, each of which

he signed: the Digital Home Advantage Plan Agreement ("Plan Agreement") and the Service Agreement. Padberg alleges that each of these agreements is standardized, non-negotiable, two pages long, and typed in approximately twelve-point font.

The Plan Agreement contains the following relevant provisions:

> *You agree to pay monthly by the due date for the programming you select and for all applicable fees.*
>
> *All payments are non-refundable.*
>
> *We reserve the right to change prices, packages and programming at any time, including without limitation, during any term commitment to which you have agreed.*
>
> *. . . .*
>
> *This agreement ("Agreement") sets forth the terms and conditions of the Digital Home Advantage plan. The Residential Customer Agreement ("RCA"), incorporated herein, contains additional terms and conditions. The RCA is included in your receiver's user's guide and is available online at dish.com.*

[Exhibit 2].

Padberg claims that immediately after Dish Network installed its equipment at Padberg's residence, it provided Padberg with the Satellite Receiver User's Guide. This User's Guide is 156 pages and includes twelve chapters printed in Arial ten to twelve-point font. Located in the Appendix of the User's Guide is the Residential Customer Agreement. The Residential Customer Agreement contains the following relevant provisions:

> *I.    <u>Changes in Services Offered</u>. We may add, delete, rearrange and/or change any and all programming [or] programming packages . . . as well as the prices and fees related to such programming, programming packages and Services . . . . In the event that we delete, rearrange or change any programming, programming packages or other Services, we have no*

2

*obligation to replace or supplement such programming. . . . You are not entitled to any refund because of a deletion, rearrangement or change of any programming [or] programming packages . . . .* [Exhibit 4 at 2].

*D.     No Credits.  If your Services are cancelled or disconnected for nay reason, you still must pay all outstanding balances accrued . . . . Except in certain limited circumstances, charges for Services, once charged to your account, are non-refundable, and no refunds or credits will be provided in connection with the cancellation of Services.*  [Exhibit 4 at 5].

*A.     Interruptions and Delays.  Neither we nor our third-party billing agents, nor any of our or their affiliates, will be liable for any interruption in any service or for any delay or failure to perform, including without limitation: if such interruption, delay or failure to perform arises in connection with the termination or suspension of Dish Network's access to all or any portion of services . . . or any other cause beyond our reasonable control.*  [Exhibit 4 at 7-8]

*F.     Damages Limitation.  [Nor] shall [we] have any liability whatsoever for any special, indirect, incidental or consequential damages arising out of or relating to . . . our furnishing or failure to furnish any services or equipment to you . . . .* [Exhibit 4 at 8].

In October, 2010, Padberg subscribed to a Dish Network package that included a FOX regional sports channel.  Dish Network did not provide this channel from October 1, 2010, to October 29, 2010.  Dish Network refused to compensate Padberg in any way for this loss of programming.  Padberg now seeks compensation alleging the following counts: (I) breach of contract; (II) breach of good faith and fair dealing; (III) unjust enrichment; (IV) declaratory judgment; (V) Colorado Consumer Protection Act; (VI) Missouri Merchandising Practices Act; (VII) injunctive relief.

**II.     Discussion**

    **A.     Governing Law**

3

Dish Network argues that the parties executed a valid choice-of-law clause in the User-Guide Contract that requires the Court to apply Colorado law. Padberg does not expressly affirm or refute this, but cites both Colorado and Missouri law throughout his briefing. Because the Court is sitting in diversity, it looks to the law of Missouri, the forum state, to resolve choice-of-law issues. *Bank of America, N.A. v. UMB Fin. Servs., Inc.*, 618 F.3d 906, 911 (8th Cir. 2010). Courts applying Missouri law generally enforce parties' choice of law provisions in contracts so long as the law chosen by the parties "is not contrary to a fundamental policy of Missouri." *Kagan v. Master Home Prods. Ltd.*, 193 S.W.3d 401, 407 (Mo. Ct. App. 2006). On the current record, the Court finds there is no basis to conclude that the choice of law provision in the Residential Customer Agreement should not be applied. Therefore, the Court assumes Colorado law controls for purposes of the pending motion.

### B. Padberg's Contract Claim

#### 1. Is the Residential Customer Agreement Enforceable?

Padberg argues that the Residential Customer Agreement is unconscionable and should not be considered. Because the Court finds that the Motion to Dismiss must be denied even if the Residential Customer Agreement is considered, the Court will assume, for purposes of this Motion to Dismiss only, that the Residential Customer Agreement was properly incorporated by reference into the Plan Agreement and its terms are enforceable.

#### 2. Has Padberg Alleged a Plausible Breach of Contract Claim?

4

Dish Network asserts that Padberg has not plead a viable breach of contract claim because both the Plan Agreement and the Residential Customer Agreement permit Dish Network to change its price and programming at any time. Further, both documents state that the customer is not entitled to any refund ("all payments are non-refundable" [Exhibit 2]; "[y]ou are not entitled to any refund because of a deletion, rearrangement or change of any programming [or] programming packages . . . ." [Exhibit 4]). Therefore, Dish Network argues that it did not breach any term of its contract because the contract permits the Fox Regional Sports Channel to be dropped without any compensation to Padberg for the loss.

In support of its motion, Dish Network specifically relies on the following provision of the Plan Agreement: "We [Dish Network] reserve the right to change prices, packages and programming, at any time, including without limitation, during any term commitment to which you have agreed." [Exhibit 2]. In response, Padberg contends that this sentence only precludes Padberg from getting a better price in the future when Dish Network makes a more favorable offer to new customers. However, the plain language of the agreement has no such limitation and Padberg's strained interpretation is not logical. There is no persuasive explanation why Padberg would have any legal right to a better price because it was offered to a different party in the future. Therefore, there is no logical reason to think the parties would guard against this nonexistent legal right. Further, even if Padberg were correct on this point, the Residential Customer Agreement specifically states that Dish Network can change programming at any time and Padberg is not entitled to a refund , eliminating any ambiguity. Thus, the Court agrees that both the Residential Customer Agreement and the Plan Agreement

5

give Dish Network the discretion to change the programs in Padberg's package at any time.

Padberg argues in the alternative that if Dish Network can change price and programming at any time, then Padberg's agreement with Dish Network is unenforceable because it is illusory. An agreement is invalid as illusory if it lacks consideration or leaves sole discretion with one party whether to perform. *See Bernhardt v. Hemphill*, 878 P.2d 107, 111 (Colo. App. 1994). Padberg argues that his agreement with Dish Network is illusory if it entitles Dish Network to collect monthly payments from Padberg regardless of whether Dish Network supplies Padberg with any satellite programming and prevents Padberg from getting compensation when Dish Network fails to perform.

Were Padberg correct that this was the extent of the duties created by the parties' agreement, the agreement would be illusory. But all contracts contain an implied duty of good faith and fair dealing. *Mahan v. Capitol Hill Internal Medicine P.C.*, 151 P.3d 685, 690 (Colo. App. 2006). The implied duty requires the party with discretion to exercise it reasonably. *Bloom v. National Collegiate Athletic Ass'n*, 93 P.3d 621 (Colo. App. 2004), *PurCo Fleet Services, Inc. v. Koenig*, 240 P.3d 435 (Colo. App. 2010) Because the contract grants Dish Network the discretion to change Padberg's programming, Dish Network's programming decisions are therefore subject to an implied duty of good faith and fair dealing, and a requirement that Dish Network exercise its discretion reasonably. *See Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995). *Also see,* Steven J. Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith*, 94 HARV. L. REV. 369, 373 (1980), *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006), *Bloom v. National Collegiate Athletic*

6

*Ass'n*, 93 P.3d 621 (Colo. App. 2004), *PurCo Fleet Services, Inc. v. Koenig*, 240 P.3d 435 (Colo. App. 2010). Whether Dish Network breached this duty is a question of fact, and centers on whether Dish Network acted in a manner by which each party "attain[ed] their reasonable expectations under the contract." *Id.* at 499.

Nonetheless, Dish Network correctly states that an implied duty of good faith and fair dealing cannot contradict the express terms of the contract. *ADT Security Services, Inc. v. Premier Home Protection, Inc.*, 181P3d 288, 293 (Colo. App. 2007). Dish Network then seems to argue that because the Plan Agreement and the Residential Customer Agreement preclude a refund or supplementation of services if Dish Network changes the programming, Dish Network had no duty to reasonably exercise its discretion to make changes. However, these terms do not expressly contradict Dish Network's duty of good faith and fair dealing. They don't say or imply that Dish Network can make changes without regard to the reasonable expectations of the parties. Instead, they relate to what remedy is available if such a breach occurs. Therefore the operative question is whether these contract terms preclude any remedy if the duty of good faith and fair dealing is breached. The answer is no.

Because there is no right to a refund for payments already made does not mean that a credit going forward for lost programming, or a future change in price reflecting the lost services, is not within the reasonable expectation of the parties. Indeed, the section of the Residential Customer Agreement dealing with cancellation of service, specifically prohibits both credits and refunds [Exhibit 4 at 5], but the section dealing with changes in programming only prohibits refunds [Exhibit 4 at 2]. This suggests that other remedies, such as a credit, are

7

available if Dish Network exercises its discretion to change programming and price in an unreasonable way.

Dish Network also seems to argue that Section 7 of the Residential Customer Agreement precludes Plaintiffs from pursuing a claim for breach of a duty of good faith and fair dealing under the facts alleged. Again, that section provides:

> 7. *Limitation of Our Liability*
>
>    A. <u>*Interruptions and Delays*</u>. *Neither we nor our Third-Party Billing Agents . . . will be liable for any interruption in any service or for any delay or failure to perform, including without limitation: if such interruption, delay or failure to perform arises in connection with the termination or suspension of Dish Network's access to all or any portion of services . . . .or any acts of God, fires, earthquakes, . . . or any other cause beyond our reasonable control.* [Exhibit 4 at 7-8].

Although this section does not contradict any implied duty of good faith and fair dealing, at first blush it seems to say that Dish Network cannot be held liable for any interruption or delay of any or all programs for any period of time. Indeed, the section also says that Dish Network has no liability for failure to perform, separate and distinct from interruptions and delays. ("[C]ourts should seek to give effect to all provisions so that none will be rendered meaningless." *Chandler-McPhail v. Duffey,* 194 P3d 434, 437 (Colo. App. 2007)).

Thus, focusing only on this language, the contract literally means that Dish Network can deliver whatever programs it chooses without regard to the program package agreed to, and Padberg would have no recourse. Such an interpretation would of course render the contract illusory. However, the Court is obligated to consider the entire contract and should not read

8

a particular phrase in isolation. *Allstate Ins. Co. v Huizar,* 52 P3d 816,818 (Colo. App. 2002). There are two additional parts of this contract that demonstrate that the parties did not intend Dish Networks to have the extreme and unexpected breadth of discretion suggested by the first clause limiting liability for interruptions, delays and failure to perform. Of primary importance is the last phrase in that same sentence. It says: "*or any other cause beyond our reasonable control.*" [Exhibit 4 at 8] This suggests that Dish Network's liability is limited only when the circumstances are beyond Dish Network's control, a concept completely consistent with the duty of the good faith and fair dealing and most likely to reflect the intentions of the parties at the time the agreement was formed. Further, it is an interpretation that prevents the contract from being illusory. Second, the last paragraph of Section 7 of the Residential Customer Agreement limits damages "for furnishing or failing to furnish any service". It provides that there will be "no special, indirect, incidental or consequential damages" for failing to furnish services. If Dish Network had no liability for "failure to perform" or for interruptions of services over which it had control, there would be no need to talk about how damages will be limited when services are not provided. Therefore, it is logical to interpret the Residential Customer Agreement to mean that Dish Network's liability was limited when an interruption in service or a failure to perform was caused by events beyond the control of Dish Network.

      Therefore the Court cannot say that Padberg's Counts I and II are implausible, because the operative question is whether it was reasonable for Dish Network to stop providing the Fox channel, keep the payments it would have been paying previously for the channel and provide

9

no recompense to its customers. Such a fact question cannot be resolved by a motion to dismiss.

### C. Padberg's Non-Contract Claims

#### 1. Unjust Enrichment

Padberg states that he "seeks unjust enrichment as an alternative theory in the event that the Court finds the contract between DISH and Plaintiff illusory, lacking in mutuality, or unconscionable." [Doc. 29 at 22-23]. Padberg would argue that Dish Network was unjustly enriched by retaining Padberg's monthly payment in a month where Padberg's access to FOX Regional Sports was interrupted. "In general, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract." *See Interbank Invs. v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003), *cert. denied*, 77 P.3d 814. Because the Court holds that Dish Network's conduct is expressly covered by a valid agreement between the parties, it dismisses Padberg's alternative theory of unjust enrichment.

#### 2. Colorado Consumer Protection Act

Padberg alleges that Dish Network violated the Colorado Consumer Protection Act ("CCPA") by failing to disclose in advertisements its right to change programming without refund, failing to disclose in advertisements the relevant dates of its license with FOX, charging customers and retaining their payments for programming it never delivered, and refusing to allow customers to cancel their contract without a cancellation fee. To state a claim under the CCPA, a plaintiff must allege:

10

(1) that the defendant engaged in an unfair or deceptive trade practice;

(2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation;

(3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property;

(4) that the plaintiff suffered injury in fact to a legally protected interest; and

(5) that the challenged practice caused the plaintiff's injury.

*Rhino Linings USA, Inc. v. Rocky Mount. Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003). Included in the definition of "deceptive trade practice" is making a knowingly or recklessly false representation that has the "capacity or tendency to attract customers." *Id.* at 147. But a promise to perform a contract is not a "deceptive trade practice" under the CCPA unless "the promisor did not intend to honor it at the time it was made." *Id*. at 148.

Padberg's CCPA claims arising from statements and omissions in Dish Network's advertising fail for lack of causation. That is, even if Dish Network engaged in deception in advertising, that deception was remedied by express terms in the contract read and signed by Padberg before Padberg incurred any of the damages alleged in the Complaint. And there is no allegation that Dish Network intended to not perform the agreement it signed. Thus, Padberg's Colorado Consumer Protection claim is dismissed.

### 3. Missouri Merchandising Practices Act

Padberg alleges that the actions alleged to violate the CCPA also violate the Missouri Merchandising Practices Act ("MMPA"). To state a claim under the MMPA, a plaintiff must allege that he or she "[1] purchase[d] or lease[d] merchandise [2] primarily for personal, family

11

or household purposes and thereby [3] suffered an ascertainable loss of money or property, real or personal, [4] as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020." Mo. Rev. Stat. § 407.025. Here, the parties appear to dispute the fourth element, which requires a plaintiff to allege that the defendant "used or employed a deception, fraud, false pretense, false promise, misrepresentation, unfair practice, concealment, suppression, or omission in connection with the [lease or sale]." *Chochorowski v. Home Depot U.S.A., Inc.*, 295 S.W.3d 194, 198 (Mo. Ct. App. 2009). These allegations must be pled with particularity, but they do "not necessarily need to be stated with the same particularity as a claim of common law fraud or mistake." *Ullrich v. CADCO, Inc.*, 244 S.W.3d 772 (Mo. Ct. App. 2008).

Padberg claims that Dish Network engaged in misrepresentation by stating in an advertisement that "You won't miss out on your regional teams' action with this package," [Doc. # 1-1 at 2], and entering a contract by which it was not obligated to ensure continuous coverage to that programming.

Padberg's MMPA claims fail for the same reasons as do his CCPA claims. Padberg's claims arising from representations made in Dish Network's advertisements fail for causation because the intervening factor of Padberg reading and signing the contract means Padberg cannot show an ascertainable loss "resulting from" Dish Network's actions, based on the facts alleged. This conclusion is supported by the rulings in *Kiechle v. Drago* 694 S.W.2d 292, 294 (Mo. Ct. App. 1985) and *Schuchmann v. Air Servs. Heating and Air Cond'g*, 199 S.W.3d 228, 233-34 (Mo. Ct. App. 2006) which do not appear to contemplate that the MMPA allows a

12

claim for an activity that constituted performance of a valid contract. The *Schuchmann* court explicitly stated: "This state has a long held public policy that recognizes the right of persons or entities to freely contract; accordingly, courts enforce contracts that are lawful, even though they may be bad deals for a particular party." 199 S.W.3d at 233.

Therefore, the Court grants Dish Network's Motion to Dismiss Padberg's MMPA claim.

### 4. Declaratory Judgment

Padberg also asks in the alternative that the Court declare the parties' rights on seventeen aspects of their agreement. "[A]ny court of the United States...may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. "A district court may exercise its discretion and determine that a declaratory judgment serves no useful purpose." *Cincinnati Indem. Co. v. A & K Const. Co.*, 542 F.3d 623, 625 (8th Cir. 2008); *see also In re Orion Pics. Corp.*, 4 F.3d 1095, 1100 (2d Cir. 1993) (explaining that a district court may reject claims for declaratory judgment on issues also presented in a direct action). Because the Court concludes that Padberg's request for declaratory judgment serves no identified purpose separate from Padberg's enforcement of a contract claim, the Court declines to exercise jurisdiction to make the declarations sought by Padberg.

### 5. Injunctive Relief

Padberg requests that the Court enjoin Dish Network from continued violations of the law, including: (1) retaining monthly payments from customers for programming Dish Network did not provide; (2) refusing to allow such customers to cancel their contracts without penalty; and (3) continuing to market its services without disclosing the expiration dates of its
13

contracts with content providers. The Court is uncertain at this time how Padberg's request for an injunction relate to his contract claims. Therefore, the Court at this time declines to grant Dish Network's Motion to Dismiss as to Padberg's injunction claims.

### III.     Conclusion

For the foregoing reasons, it is ORDERED that Defendant Dish Network's Motion to Dismiss is DENIED as to Counts I, II and VII, and GRANTED as to Counts III, IV, V and VI.

s/ NANETTE K. LAUGHREY
NANETTE K. LAUGHREY
United States District Judge

Dated: June 11, 2012
Jefferson City, Missouri