**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| **MIKE PADBERG, individually and on behalf of all others similarly situated,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No.  11-4035** |
| **DISH NETWORK, L.L.C.,** | ) ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) ) | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Mike Padberg, individually and on behalf of all others similarly situated, and for his Complaint against Defendant DISH Network, L.L.C. (referred to herein as "DISH"), states as follows:

**Nature of the Action**

1.      In this action, Plaintiff, on behalf of himself and others similarly situated, seek relief as a result of DISH's:

a.      failure to provide satellite television programming to Plaintiff and the putative class for the month of October 2010, which Plaintiff and the putative class selected, purchased and paid DISH for, and which DISH contractually agreed to provide; and

b.      DISH's refusal to provide Plaintiff and the putative class full monetary relief, in the form of a credit, rebate or reimbursement of the monthly premiums paid to DISH for the deleted programming.

2.      DISH's actions are unfair, unlawful and have damaged millions of individuals nationwide.  Plaintiff bring this action on his own behalf and as a representative of all DISH

1

subscribers throughout the United States who paid for DISH satellite television packages which included FOX Network's regional sports and the FX channels during the month of October, 2010.

3.    The collection and retention by DISH of Plaintiff's and the Class' payments for services Plaintiff and the Class did not receive, including FOX Network's regional sports and FX, without full credit, recompense or reimbursement, gives rise to claims by Plaintiff and the Class for breach of the parties' contracts and breach of the duty of good faith and fair dealing.

4.    Plaintiff seeks to recover for himself and the putative Class:

    a.    actual damages  for the satellite television programming contracted and paid for by Plaintiff and the Class but which DISH failed to provide to Plaintiff and the Class; and

    b.    Plaintiff's and the Class' costs, expenses and attorneys' fees incurred in this action.

## The Parties

5.    Plaintiff Mike Padberg is a citizen of the State of Missouri, residing in Cole County, Missouri.  Plaintiff is an individual consumer who was a DISH customer from approximately September, 2004 to December, 2011 and purchased from DISH a satellite television package that provided access to FOX Sports Midwest, FX and other television channels.

6.    Defendant DISH is a Colorado limited liability company, with its principal place of business at 9601 South Meridian Blvd., Englewood, Colorado.

## Jurisdiction and Venue

7.    This Court has personal jurisdiction over DISH because DISH conducts business

in the State of Missouri including, but not limited to, the marketing and sale of satellite television access packages.

8.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2) of the Class Action Fairness Act of 2005, because Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, Plaintiff and certain members of the Plaintiff class are citizens of different states than Defendant and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claim occurred in this District, as Plaintiff is a resident of Cole County, Missouri, which is located in the Central Division of the Western District of Missouri.

### DISH's Advertising And Sale Of Television Programming

10.     DISH advertises and sells satellite television access packages to consumers nationwide, including "America's Top 120", "America's Top 120+", "America's Top 200", "America's Top 250", and "America's Everything Pak" (the "Packages").

11.     With the exception of "America's Top 120", the Packages include regional sports programming, such as FSN.  America's Top 200, America's 250 and America's Everything Pak also include FX.

12.     DISH incorporates its cost of purchasing FSN and FX into the price charged to consumers for such programming.  For instance, in October 2010, DISH's website, dishnetwork.com, advertised that for $24.99 per month for one year, subscribers could receive "America's Top 120" (without FSN), as follows:

3

**Over 120 Favorite Channels**

An exceptional digital TV package sure to please the entire family.
Enjoy CNN, Discovery Channel, Disney Channel and ESPN with
America's Top 120.

dishnetwork.com. For an additional $5.00 per month, however, subscribers could receive

DISH's "America's Top 120+" Package, which consists of the same programming as "America's

Top 120", *plus regional sports programming*:

**Over 120 Favorite Channels + Local Sports Network(s)**

Includes all of the great satellite programming in our America's
Top 120 package *with the addition of your Local Sports
Network(s). You won't miss out on your regional teams' action
with this package*.

http://dishnetwork.com (emphasis in bold italics added). In most areas of the country, DISH's

regional sports programming consists of at least one of FOX Network's 19 regional sports

channels. For instance, in Missouri, the "Local Sports Network" purchased by subscribers from

DISH is FOX Sports Midwest, which is the primary provider of St. Louis Cardinals Baseball and

St. Louis Blues Hockey, and provides programming for regional collegiate sports, such as

University of Missouri Football. In other areas of the country, DISH subscribers purchase

regional sports programming from one of 18 other regional FOX Network sports programs, such

as FOX Sports West (west coast states), FOX Sports North (upper Midwest states), and FOX

Sports Southwest (southwestern states other than Arizona). The 19 FOX Network's regional

sports networks are hereinafter collectively referred to as "FSN".

13.     DISH's advertisements do **not** state or disclose that DISH may, at any time during

the subscription term, delete or change any of the programming paid for by the consumer, or

change the pricing of such programming, without credit, recourse or recompense to the

consumer.

4

## Plaintiff's Order and Confirmation

14.     On or about September, 2004, Plaintiff ordered one of DISH's satellite television packages which included FSN and FX programming.

15.     Prior to installation of DISH equipment and services, DISH confirmed with Plaintiff who would be the account holder, account number, service address, programming package selected (including a summary of the programming), equipment and date of installation.

16.     The confirmation did not state or disclose that DISH may, at any time during the subscription term, delete or change any of the programming paid for by Plaintiff and the Class, or change the pricing of such programming, without any credit, recourse or recompense to Plaintiff and the Class.

## DISH's Standardized Customer Agreement

17.     On the installation date, DISH's installers (the "Installers") installed the DISH equipment at Plaintiff's residence.

18.     Following installation, Plaintiff's signed documents presented by the installer. Upon information and belief, Plaintiff signed: (a) a Digital Home Advantage Customer Agreement (the "Customer Agreement"); and (b) a DISH Network Service L.L.C. Service Agreement (the "Service Agreement"), which are form documents DISH presents to all of their customers.   Copies of Plaintiff's Customer Agreement and Service Agreement are attached hereto respectively as Exhibits 1 and 2.

19.     The Customer Agreement is a single-spaced, standardized form document in extremely small font.

20.     The Customer Agreement is non-negotiable.

5

21.     The Customer Agreement provides that the customer agrees to pay for the programming that the customer selects:

> You [the customer] agree to make a monthly payment to DISH Network by the payment due date **for programming** and the following fees and equipment **you select.**

Ex. 2 (emphasis added).

22.     The Customer Agreement provides that "prices, packages, and programming may change at any time." Ex. 2.

23.     Pursuant to the Customer Agreement, if a customer cancels a contract before its term has expired, DISH requires a cancellation fee per month for each month remaining on the contract. Ex. 2.

### The 2010 Customer Agreement

24.     In January 2010, Plaintiff entered a second 24-month term agreement with DISH (the "2010 Agreement"). A copy of the 2010 Agreement is attached hereto as Exhibit 3.

25.     Like the Customer Agreement, the 2010 Agreement is a single-spaced, standardized form document in extremely small font.

26.     Like the Customer Agreement, the 2010 Agreement is non-negotiable.

27.     Like the Customer Agreement. the 2010 Agreement provides that the customer agrees to pay for the programming that the customer selects:

> You [the customer] agree to make a monthly payment by the payment due date **for the programming you select** and for the following fees as applicable depending on the equipment you select.

Ex. 3, p. 2 (emphasis added).

6

28.     Similar to the Customer Agreement, the 2010 Agreement provides that DISH "reserve[s] the right to change prices, packages, and programming at any time, including without limitation, during any term commitment to which you have agreed."  Ex. 3, p. 1.

29.     Like the Customer Agreement, the 2010 Agreement provides that, if a customer cancels a contract before its term has expired, the customer is required to pay a cancellation fee based on the number of months remaining on the contract.  Ex. 3, p. 1.

30.     Both the Customer Agreement and the 2010 Agreement are consistent with all of DISH's Customer Agreements in effect in October 2010.

31.     Neither the Customer Agreement nor the 2010 Agreement state that DISH may, at any time during the subscription term, choose not to provide programming paid for by Plaintiff without providing any credit, recourse or recompense to Plaintiff for the payments made by Plaintiff to DISH for such programming.

### The RCA

32.     Following installation, DISH customers, including Plaintiff receive a 156-page Satellite Receiver User's Guide that includes 12 Chapters dealing with the setup and use of the satellite equipment.  The Chapters each are identified on the cover of the User's Guide and in the Guide Overview and include, for instance, "Receiver and Remote Control", Finding Programs to Watch", "Record Future Programs", and "Connections and Setup".  The Chapters themselves appear in Arial 10-12 point font and use lists and spacing to make it easier to read.

33.     In the back of the User's Guide, in the "Appendix", on pages 146-151, DISH places a 6-page, single-spaced document, in 8.5 font, entitled Residential Customer Agreement ("RCA").  A copy of the RCA is attached hereto as Exhibit 4.

7

34.     DISH does not require that customers execute the RCA either prior to installation, or at any time thereafter, and upon information and belief, the RCA is not even provided to customers prior to installation.

35.     The RCA, by its terms, is standardized and non-negotiable, providing: "No salesperson, installer, customer service representative, authorized retailer, or other similarly situated individual is authorized to change the terms and conditions of this Agreement." Ex. 4, p. 151 § 9(H).

36.     The RCA contains terms and conditions materially different from, and not found in, the Confirmation, Customer Agreement, 2010 Agreement, and Service Agreement.  These additional terms and conditions purport to relieve DISH from any obligation whatsoever to provide satellite programming selected and paid for, in advance, by the customer, or to perform any other obligation under the Confirmation, Customer Agreement, 2010 Agreement, and Service Agreement.

37.     For instance, on page 147 of the User's Guide, § 1(G) of the RCA, states in 8.5 type, that DISH may, at any time, in DISH's sole discretion, with prior notice to the Customers, unilaterally delete any and all programming from the customer's subscription agreement and/or change the prices and fees of its services, without any refund whatsoever to the customer:

> We reserve the right to add, delete, rearrange, and/or change any and all programming, programming packages, and other Services that we offer, and our prices and fees related to such programming, programming packages and Services at any time, including without limitation during any term agreement period to which you have agreed under the terms and conditions of any other agreement with DISH Network.  If a change affects you, we will provide you notice of such changes and its effective date.  In the event that we delete, rearrange or change any programming, programming packages or other Services, you understand and agree that we have no obligation to replace or supplement any programming, programming packages or other Services previously offered that have been deleted, rearranged or otherwise changed.  You further understand and agree that you will not be entitled to any refund because of a deletion, rearrangement or change in the contents of any programming, programming packages, or other Services previously offered.

Ex. 4, p. 147 § 1(G).

Case 2:11-cv-04035-NKL   Document 127   Filed 08/30/12   Page 8 of 16

38.     On page 150 of the User's Guide, § 7 of the RCA purports to limit DISH's

liability for service interruptions which DISH does **not** control, specifically, "for any

interruptions in service or for any delay or failure to perform, including, without limitation if

such interruption or delay or failure to perform arises in connection with the termination or

suspension of DISH Network's access to all or any portion of services . . . ." Ex. 4. p. 150 §

7(A).  The last phrase of § 7(A) explains that this section applies to "any other cause ***beyond***

***[DISH's]*** control."

39.     For failures to perform that are within DISH's control,  § 7(D) only disclaims

liability for special, indirect, incidental or consequential damages and does **not** disclaim liability

for compensatory damages:

> IN NO EVENT SHALL WE, OUR THIRD PARTY BILLING AGENTS, OR ANY OF OUR OR
> THEIR AFFILIATES HAVE ANY LIABILITY FOR SPECIAL, INDIRECT, INCIDENTAL OR
> CONSEQUENTIAL DAMAGES ARISING OUT OF OR RELATING TO DISH NETWORK
> EQUIPMENT OR ANY OTHER EQUIPMENT OR RESULTING FROM OUR FURNISHING
> OR FAILURE TO FURNISH ANY SERVICES OR EQUIPMENT TO YOU, OR FROM ANY
> FAULT, FAILURE, DEFICIENCY OR DEFECT IN SERVICES OR EQUIPMENT
> FURNISHED TO YOU.

Ex. 4, p. 150 § 7(D).

40.     Section 3 of the RCA, which deals with cancellation of DISH services,

differentiates between refunds and credits and states that a customer may receive refunds or

credits for charges for services in some circumstances:

> You understand that, ***except in certain limited circumstances***, charges for Services,
> once charged to your account, are nonrefundable and no refunds or credits will be provided
> in connection with the cancellation of subscriptions to Services.

Ex. 4, p. 148 § 3(E) (emphasis added).

41.     The RCA recites that the Agreement "shall be governed by the laws of the State

of Colorado.  Ex. 4, p. 151 § 9(E).

42.     DISH's on-line version of the RCA is consistent with the RCA found in the back

of the User's Guide.  A copy of the on-line version of the RCA is attached hereto as Exhibit 5.

43.     Pursuant to the Confirmation, Customer Agreement, and 2010 Agreement Plaintiff and the Class selected, purchased and paid DISH for satellite programming which included FSN regional sports programming and FX.

44.     As early as September 2007, DISH knew and understood that its carrier agreement with FOX (the "DISH/FOX Agreement") would expire on September 30, 2010, after which DISH would not be able to provide to its customers FSN and FX.

45.     Prior to September 30, 2010, DISH elected not to renew the DISH/FOX Agreement.

46.     On September 30, 2010, the DISH/FOX Agreement expired.

47.     Thereafter, from October 1, 2010 to October 29, 2010, DISH refused to purchase FSN and FX programming from FOX for Plaintiff and the Class, saving millions of dollars that it would have otherwise paid to FOX.

48.     During this period, without any prior notice to Plaintiff and the Class, DISH: (A) refused to provide FSN and FX programming to Plaintiff and the Class; (B) pocketed the millions of dollars paid by Plaintiff and the Class for such programming; and (C) refused to provide to Plaintiff and the Class full credit, reduction in DISH's monthly fees or any other monetary relief.

49.     In fact, during this period, DISH continued to advertise and sell programming packages that purported to include FSN and FX programming.

50.     The Customer Agreement, 2010 Agreement and RCA are illusory, lack mutuality and are unenforceable.  In the alternative, all portions of the Customer Agreement, 2010 Agreement and RCA that purport to allow DISH to modify or limit programming at-will,

10

including those referenced above, without any compensation to its customers,  are illusory, lack mutuality, are unenforceable and should be severed.

**Class Action Allegations**

51.      Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on his own behalf and on behalf of a nationwide Class (the "Class") defined as:

> All DISH customers in the United States who paid DISH for programming that included FSN or FX programming for the period October 1, 2010 through October 29, 2010 and did not receive FSN or FX programming during the period October 1 through October 29, 2010.

52.      Excluded from the Class are affiliates, predecessors, successors, officers, directors, agents, servants, or employees of DISH, and the immediate family members of such persons.  Also excluded is any trial judge who may preside over this action, court personnel and their family members and any juror assigned to this action.

53.      Plaintiff is a member of the Class, which he seeks to represent.

54.      The Class consists of millions of individuals and therefore is so numerous that joinder is impracticable.

55.      Plaintiff's claims are typical of the claims of the Class because Plaintiff and all members of the class have sustained damages as a result of DISH charging a monthly fee for satellite television channels which it did not provide.

56.      There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including but not limited to the following:

> a.      whether DISH's RCA, or provisions thereof, is illusory, lacks mutuality, or is unconscionable and severable;

11

b.    whether DISH's Customer Agreement or 2010 Agreement, or provisions

thereof, is illusory lacks mutuality, or is unconscionable and severable;

c.    whether DISH is entitled to delete or change the programming and/or

change the pricing of a customer's existing subscription agreement

without credit or other monetary relief to the customers;

d.    whether DISH's failure to provide Plaintiff and the Class satellite

television programming which Plaintiff and the Class selected and paid

for, or credit or other monetary relief for the failure to provide such

programming, constitutes a breach of contract under Colorado law;

e.    whether DISH's failure to provide Plaintiff and the Class satellite

television programming which Plaintiff and the Class selected and paid for

without credit or other monetary relief constitutes a breach of the covenant

of good faith and fair dealing under Colorado law;

f.    whether Section 7 of DISH's RCA disclaims liability for compensatory

damages for suspensions in services that are within DISH's control; and

g.    whether Colorado law applies to all claims asserted in this case.

57.    All common questions are able to be resolved through the same factual

occurrences as specifically and/or generally alleged herein.

58.    Plaintiff will fairly and adequately represent and protect the interests of the

members of the Class.  Plaintiff has no claims antagonistic to those of the Class.  Plaintiff

retained competent and experienced counsel in complex class actions, mass tort and products

liability litigation.  Counsel is committed to the vigorous prosecution of this action.

59.    The prosecution of separate actions by the Plaintiff and individual members of the

Class against DISH would create a risk of inconsistent or varying adjudications on the common issues of law and fact related to this action.

60.     A class action is appropriate and superior method for the fair and efficient adjudication of this controversy.

61.     The expense and burden of litigation would substantially impair the ability of the Class members to pursue individual cases to protect their rights.  In the absence of a class action, DISH will retain the benefits of its wrongdoing and will continue to collect and/or retain monthly fees and cancellation fees improperly.

## COUNT I - Breach of Contract

62.     Plaintiff hereby incorporates and adopts by reference each and every allegation set forth above.

63.     DISH entered into form agreements with Plaintiff (and the other members of the Class) pursuant to which DISH agreed to provide satellite television programming, including FSN and FX, in return for which Plaintiff and members of the Class agreed to pay for the programming the customer selected.  Exs. 1, 3, 4.

64.     DISH charged and retained monies from Plaintiff and the Class for satellite television programming which DISH did not provide to Plaintiff and the Class during the period October 1, 2010 through October 29, 2010.

65.     In so doing, DISH breached its contract with Plaintiff and the Class.

66.     As a result of the breach of contract, Plaintiff and members of the Class were damaged in the amount charged by DISH for the programming to Plaintiff and the Class.

## COUNT II
## Breach of Covenant of Good Faith And Fair Dealing

67.     Plaintiff hereby incorporates and adopts by reference each and every allegation

set forth above.

68. DISH's contracts with the Plaintiff and the Class include the implied covenant of good faith and fair dealing in which DISH owed Plaintiff and the Class the duty not to charge and retain monies from Plaintiff and the Class for goods and services which DISH did not provide to Plaintiff and the Class.

69. DISH breached its duty of good faith and fair dealing to the Plaintiff and the Class by unfairly charging and retaining monies from Plaintiff and the Class for satellite television programming that DISH did not provide to Plaintiff and the Class without providing credit or other monetary relief to Plaintiff and the Class for the failure to provide the programming.

70. DISH's breach of its covenant of good faith and fair dealing have caused the Plaintiff and the Class economic damages in the amount charged by DISH for the programming to Plaintiff and the Class.

WHEREFORE, Plaintiff, individually and on behalf of the Class, seeks the following relief:

A. certification of the proposed Class;

B. individual actual damages for Plaintiff in the amount charged by DISH for the programming paid for by Plaintiff but which DISH did not provide;

C. aggregate actual damages for the Class in the amount of the charge for the programming contracted and paid for by the Class but which DISH did not provide;

D. attorneys' fees and costs as are available under the law or equity;

E. prejudgment interest in the statutory amount; and

F. such other and further relief as the Court deems just and proper.

14

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues stated herein, and all issues so triable.

Respectfully submitted,

_____/s/Matthew A. Clement_____

Matthew A. Clement      MO Bar #43833
Timothy W. Van Ronzelen    MO Bar #44382
Kari A. Schulte          MO Bar #57739
COOK, VETTER, DOERHOFF & LANDWEHR, P.C.
231 Madison
Jefferson City, Missouri 65101
573/635-7977
573/635-7414 (facsimile)
mclement@cvdl.net
tvanronzelen@cvdl.net
kschulte@cvdl.net

Robert A. Horn           MO Bar #28176
Joseph A. Kronawitter      MO Bar #49280
HORN AYLWARD & BANDY, LLC
2600 Grand Blvd, Suite 1100
Kansas City, MO 64108
816-421-0700 - Telephone
816-421-0899- Facsimile
rhorn@hab-law.com
jkronawitter@hab-law.com

Mark C. Goldenberg       MO Bar #41355
Thomas P. Rosenfeld      MO Bar #35305
GOLDENBERG HELLER ANTOGNOLI & ROWLAND, P.C
2227 South State Route 157
Edwardsville, IL 62025
618-656-5150
618-656-6230 (fax)
mark@ghalaw.com
tom@ghalaw.com

Edward D. Robertson, Jr.    MO Bar #27183
Mary D. Winter          MO Bar #38328

15

BARTIMUS, FRICKLETON, ROBERTSON &
GORNY, P.C.
715 Swifts Highway
Jefferson City, Mo. 65109
573-659-4454
573-659-4460 (fax)
chiprob@earthlink.net
marywinter@earthlink.net

ATTORNEYS FOR PLAINTIFF