**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | | |
|---|---|---|
| MIKE PADBERG, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 11-04035-CV-C-NKL |
| DISH NETWORK LLC, | ) ) | |
| Defendant. | ) | |

**ORDER**

In its Motion for Leave to Conduct Discovery [Doc. 223], DISH seeks to depose two categories of class members. For the following reasons, the Motion is DENIED.

### I.     Background

DISH customers temporarily lost access to the FX channel and FOX regional sports networks from October 1, 2010 to October 28, 2010. Plaintiff, Mike Padberg, represents two overlapping nationwide classes of present and former DISH subscribers who paid DISH for programming packages that included those channels. He seeks to recover for breach of contract, specifically breach of the duty of good faith and fair dealing.

After the temporary loss of access, Dish sent an email to its customers inviting them to discuss the issue. Apparently, several of them responded to the email and some of those responses were identified by DISH in its initial disclosures. Specifically, DISH indicated it would use in its defense, "documents regarding subscriber complaints about

1

the temporary loss of access to the FOX RSN Programming." Upon request from Padberg, DISH produced a sample of 200 email complaints from subscribers relating to the temporary interruption. In February 2014, Padberg deposed DISH's corporate representative. During the deposition, Padberg gave 17 of the 200 emails to the corporate representative and asked questions related to DISH's response to those complaints. The representative was asked to explain what the subscriber meant in the email and to opine whether he thought the customer requests and viewpoints were reasonable or whether the subscriber was satisfied by DISH's response to his or her email.

DISH now seeks to depose: "(1) any class member on whose testimony or statements Padberg relies; and (2) absent class members selected by DISH to balance the class member testimony on which Plaintiff relies." [Doc. 228 at 2]. DISH contends that these depositions are "essential to the fairness of this case and to DISH'S defense." [*Id.*]

## II.  Discussion

Discovery from absent class members is ordinarily not permitted. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985). The Supreme Court has held that "burdens" like discovery are "rarely imposed" on class members. *Id.* 810. In exceptional circumstance, however, class members may be deposed when they have been identified as potential witnesses or have otherwise "injected" themselves into the litigation. *Antoninetti v. Chipotle, Inc.*, 2011 WL 2003292, at *1 (S.D.Cal. 2011) (discovery of class members was appropriate where they were identified in disclosures and submitted declarations used to support a class certification motion); *Mas v. Cumulus Media Inc.*, 2010 WL 4916402 at *3 (N.D. Cal. 2010) (discovery of absent class members identified

2

in the plaintiff's initial disclosures could be subject to discovery); *Moreno v. Autozone*, 2007 WL 2288165, at *1 (N.D. Cal. 2007) (discovery of absent class members is appropriate where they submitted declarations in support of the plaintiff's motion for class certification).

Contrary to the cases cited above, DISH's discovery request is fatally flawed because it has not identified any specific person it wishes to depose. Instead, it states that it wishes to depose "any class member on whose testimony or statement Padberg relies." But there is nothing in the Federal Rules of Civil Procedure that permits a party to force their opponent during discovery to identify witnesses or documents on which their opponent *relies*. Rather, the parties are required to disclose persons that have discoverable information that a party *may* use to support a claim or defense. *See* Fed. R. Civ. Pro. 26. Because DISH has not pointed to any class member that Padberg has so disclosed, its requested discovery is not warranted on that basis. Nor has DISH shown any class member who has injected themselves into this litigation. The only class specific evidence identified by DISH in its Motion, are the emails sent to DISH by its customers in response to DISH's invitation to comment after the 2010 service interruption.[1] But a communication that is invited and sent before litigation is even commenced is not evidence that a class member has inserted himself into this lawsuit. Therefore, all of the cases cited by DISH in support of it request, are substantially distinguishable.

---

[1] The Court will assume these customers are class members for purposes of this Order.

Further, if DISH is arguing that it should be permitted to wait to take depositions until after Padberg submits his witness or exhibit list for trial, or submits evidence in support or opposition to summary judgment, its request is contrary to the Court's scheduling order which contemplates the completion of discovery before summary judgment and trial preparation. Otherwise, the record is forever changing and finality cannot be achieved in an orderly manner. Moreover, Dish has failed to identify anything unexpected that would justify doing discovery after discovery has closed. Wanting to see their opponent's strategic decisions before taking a deposition is not a justification.

At most, DISH's request could be interpreted as a request to depose the class members whose emails were identified by Padberg during the deposition of DISH's corporate representative, but those documents were all in the possession of DISH and only DISH had an obligation to disclose them. Padberg did not have and does not have an obligation during discovery to tell DISH whether it intends to rely on those documents, any more than DISH has an obligation to tell Padberg what information it intends to rely on. Further, and most importantly, DISH has failed to identify any subject matter that could be explored during such a deposition that would lead to admissible evidence. Arguably, the statements in the emails may be relevant simply because they were made, but the subjective intent of the customer making the statement or what the customer meant by the statement is not relevant. Thus the Court rejects DISH's argument that absent class member testimony is relevant and necessary to its defense because "[t]he actual expectations and understanding of individual class members that will be obtained through the proposed discovery . . . will demonstrate that the expectation

that Padberg asserts is not uniformly (or even commonly) held, or is contrary to the reasonable expectations and understanding of other class members." [Doc. 224, at p. 12]. The Court has already determined that the "subjective intent of DISH and its customers when entering into the contract is not relevant because the contract terms are clear." [Doc. 180, at p. 8]. Under Colorado law, "reasonable expectations" arising out of a contract are assessed objectively "by reference to what meaning a person of ordinary intelligence would attach to" the contractual provision. *Simon v. Shelter Gen. Ins. Co.*, 842 P.2d 236, 240 (Colo. 1992).

Nonetheless, DISH argues the Court's ruling is only preliminary and should be changed based on a recent case applying Colorado law. *See Chimney Rock Pub. Power Dist. v. Tri-State Generation & Transmission Ass'n, Inc.*, 2014 WL 788057 (D. Colo. 2014). But the holding in that case did not address the same issue that controls here. In *Chimney Rock*, over a period of time, the plaintiffs contracted with the defendant to provide the plaintiff's electric power requirements. Plaintiffs sued the defendant for breach of the implied covenant of good faith and fair dealing for failing to fairly set rates. The Colorado district court, in granting summary judgment, referred to the defendant's historical discretion to set rates as being relevant to the parties justified expectations. The court went on to hold that summary judgment was appropriate because the "undisputed facts" demonstrated that the parties had a fifty year contractual history wherein the defendant had repeatedly used its discretion to set rates using the same methodology plaintiffs were now objecting to. *Id.* at *4. Nowhere in the opinion, however, does the *Chimney* court change the long standing law articulated by the Colorado Supreme Court

that "reasonable expectations" arising out of a contract are assessed objectively "by reference to what meaning a person of ordinary intelligence would attach to" the contractual provision. *Simon v. Shelter Gen. Ins. Co.*, 842 P.2d 236, 240 (Colo. 1992). The *Chimney* court's oblique reference to discretion or the parties' expectations, does not imply that it was evaluating the subjective intent of the parties. Such a conclusion would violate the precedent of the Colorado Supreme Court and should not be implied lightly, given a federal court's obligation to apply state law based on the highest precedent in the state. Thus, the *Chimney* opinion does not persuade the Court to change its long standing ruling that the subjective intent of the parties to this contract is not relevant; rather reasonable expectations are determined by applying an objective standard. The objective standard also makes common sense. No party to a form contract made with millions of people would expect the enforcement of the contract to differ from person to person based on each customer's individual, subjective intent. Therefore, DISH has failed to justify its request to depose the authors of the emails which it received.

### III. Conclusion

For the reasons set forth above, DISH's Motion for Leave to Conduct Discovery, [Doc. 223], is DENIED.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: April 8, 2014
Jefferson City, Missouri