IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MIKE PADBERG, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) Case No. 2:11-cv-04035-NKL |
| v. | ) ) ) |
| DISH NETWORK L.L.C., | ) ) |
| Defendant. | ) ) |

## FINAL JUDGMENT

The Court, having considered Plaintiff's Unopposed Motion for Final Approval of the Settlement in the above-captioned case brought by Plaintiff Mike Padberg ("Plaintiff Padberg") against DISH Network L.L.C. ("DISH" or "Defendant") (each of Plaintiff Padberg and DISH, a "Party" and, collectively the "Parties"), the Settlement Agreement and Release dated January 12, 2018 (the "Settlement Agreement and Release"), having considered the fact that no objections or comments were received regarding the proposed settlement, the record in the above captioned action (the "*Padberg* Action"), and the submissions and arguments presented by counsel, and having held a Fairness Hearing on May 24, 2018, finds that:

1. Unless defined herein, for purposes of this Final Judgment all capitalized terms in this Order shall have the same meanings as set forth in the Settlement Agreement and Release.

2. The Court has jurisdiction over the subject matter of the *Padberg* Action, Plaintiff Padberg, the Classes, and Defendant.

3. On January 23, 2018, this Court preliminarily approved the settlement as to the Classes previously certified in this case consisting of:

> 1) All present and former Dish subscribers in the United States who a) paid Dish for a programming package for all or part of October 2010 that included FSN programming; and b) did not receive a monetary credit equal to the value of such programming, which DISH failed to provide from October 1, 2010 to October 29, 2010 ("the FSN Class").

1

2) All present and former Dish subscribers in the United States who: a) paid Dish for a programming package for all or part of October 2010 that included FX programming; and b) did not receive a monetary credit equal to the value of such programming, which Dish failed to provide from October 1, 2010 to October 29, 2010 (the "FX Class").

4. Notice to the Classes of the pendency of the *Padberg* Action was previously given by direct mail or email following the Court's certification of the Classes in July 2013. Notice to the Classes of the settlement has been provided in accordance with the Court's Preliminary Approval Order. The notice given to the Classes constitutes reasonable, appropriate and sufficient notice to all Persons within the definition of the Classes under the circumstances, and fully complied with the requirements of due process and of all applicable statutes and laws.

5. The Settlement Agreement and Release was arrived at as a result of arms' length negotiations conducted in good faith by experienced attorneys familiar with the legal and factual issues of this case and who have diligently investigated and prosecuted this matter, and was facilitated and overseen by Magistrate Judge John T. Maughmer during two all-day settlement conferences with the Parties.

6. The Settlement Agreement and Release is fair, reasonable, adequate, and in the best interests of the Classes in light of the complexity, expense, and duration of litigation, as well as the risk involved in establishing liability and damages and in maintaining the *Padberg* Action through trial and appeal.

7. The settlement consideration, including the injunctive relief, provided by the Settlement Agreement and Release constitutes fair value given in exchange for the release of the Released Claims against the Released Persons. The Court finds that the consideration provided to members of the Classes is reasonable, considering the facts and circumstances of the claims and affirmative defenses asserted in the *Padberg* Action, and the potential risks and likelihood of success of alternatively pursuing trial on the merits.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

8. The Settlement Agreement and Release is finally approved as fair, reasonable, adequate, just, and in compliance with all applicable requirements of the United States Constitution

(including the Due Process Clause) and all other applicable laws, and in the best interest of the Classes. No objections were asserted by any member of the Classes. Accordingly, the Court directs the Parties and their counsel to implement and consummate the Settlement Agreement and Release in accordance with its terms and conditions.

9. Defendant and Plaintiff Padberg are hereby ordered to comply with the terms and conditions contained in the Settlement Agreement and Release, which is incorporated by reference herein.

10. The *Padberg* Action is hereby dismissed with prejudice and without costs. This judgment has been entered without any admission by Defendant of liability or as to the merits of any of the allegations in the Complaint.

11. The Releasing Persons hereby absolutely, unconditionally and irrevocably release and forever discharge the Released Persons from the Released Claims, as set forth in the Settlement Agreement and Release.

12. The following injunctive relief is hereby ordered:

(a) The following language shall appear on the face page of the English-language version of DISH's Digital Home Advantage Plan Agreement (the "DHA Plan Agreement"), and any successor agreements thereto, in no less than 10-point font, above where the customer must sign the DHA Plan Agreement:

> **Changes in Prices, Programming, Services and Features:** You acknowledge and agree that:
> - **Agreements with programming suppliers may expire during the term of your Agreement with DISH. If that occurs, some programming in your DISH services may not be available for some or all of the remaining term of your agreement with DISH, and you will not be entitled to any refund, credit, or other compensation, as more fully set forth in the RCA.**
> - **DISH has the right, at any time and from time to time without notice (including, without limitation, during any term commitment to which you have agreed), to add, delete, rearrange, alter, change and/or eliminate: (A) any and all prices, fees and/or charges; and/or (B) packages, programming, programming suppliers, services offered by suppliers, software, applications, features and/or functionalities; provided that in doing so DISH exercises its discretion consistent with the parties' reasonable expectations at the inception of this Agreement in accordance with the covenant of good faith and fair dealing implied in this Agreement under Colorado law.**
> - **DISH has the right, without notice at any time (including, without limitation, during any term commitment to which you have agreed), to change your payment terms if you fail to make payments by your payment due date.**

_____ (customer initials)

(b)     Within sixty (60) days following the Effective Date, as defined in the Settlement Agreement and Release, DISH shall modify the form of the DHA Plan Agreement that it provides to new subscribers in the manner reflected in Section 2.1 of the Settlement Agreement and Release and shall make analogous changes to the Spanish-language version, and shall post the modified DHA Plan Agreements on its website.

(c)     DISH shall be bound by the terms and conditions of the injunction described in Section 2.1 of the Settlement Agreement and Release for a period of two (2) years following the Effective Date.

(d)     DISH may apply to the Court for relief from the requirements of this injunction for good cause shown.

13.     The following monetary relief is hereby ordered pursuant to the terms of the Settlement Agreement and Release:

(a)     **Monetary Relief for Current and Former Customers.**  Within ten (10) days following the Effective Date, provided that the Claims Administrator has first provided DISH with a Form W-9 and payment instructions, DISH shall tender Two Million Seven Hundred Thousand and 00/100 Dollars ($2,700,000.00) to the Claims Administrator for deposit into a settlement fund (the "Settlement Fund") to be held by the Claims Administrator and used to pay/reimburse:  (i) certain monetary relief and account credits as set forth in Section 2.4; (ii) any Incentive Payment, as set forth in Section 2.9; (iii) the costs and expenses of the Class Notice, as set forth in Section 3; (iv) costs and expenses associated with maintaining and administering the Settlement Website, as set forth in Section 3.1(c); (v) the payments for the services and expenses of the Claims Administrator, as set forth in Section 4.3; and (vi) the Fee Payment, as set forth in Section 2.8.

(b)     **Monetary Relief and Credits for AT120+ Customers.**  DISH shall provide to each AT120+ Customer, pursuant to the procedures set forth in Section 4 of the

Settlement Agreement and Release, one of the following forms of settlement relief, depending on whether the AT120+ Customer is a Current Customer or a Former Customer.

      i.    **AT120+ Customers Who Are Current Customers.** Each AT120+ Customer who is a Current Customer will receive, based on his or her election that was made on the Claim Form by the Claims Deadline, either:

    (1)    a Five and 00/100 Dollars ($5.00) DISH account credit if he or she, in accordance with Section 2.6, upgrades his or her core DISH programming, adds a qualifying new premium package, or adds or upgrades DISH Protect (Silver, Gold or Platinum) by: (i) so upgrading or adding between the Effective Date and the Upgrade Deadline; and (ii) maintaining such programming or protection upgrade through the Upgrade Snapshot Date;

    or, alternatively,

    (2)    Three and 00/100 Dollars ($3.00) cash payment.

For clarity, each AT120+ Customer who is a Current Customer is only eligible for one of the forms of settlement relief listed in subsections (1) and (2) above.

      ii.    **AT120+ Customers Who Are Former Customers.** Each AT120+ Customer who is a Former Customer will receive, based on his or her election that was made on the Claim Form by the Claims Deadline, either:

    (1)    a Five and 00/100 Dollars ($5.00) credit towards re-signing with DISH by: (i) re-signing with DISH between the Effective Date and the Upgrade Deadline; and (ii) during his or her sales call to re-sign with DISH, providing DISH the offer code that will be available on the Settlement Website;

    or, alternatively,

    (2)    a Three and 00/100 Dollars ($3.00) cash payment.

For clarity, each AT120+ Customer who is a Former Customer is only eligible for one of the forms of settlement relief listed in subsections (1) and (2) above.

5

iii. **Payment from Settlement Fund.** The Settlement Fund will reimburse DISH for the Five and 00/100 Dollars ($5.00) credits to AT120+ Customers on the Credit Claimant List and fund and issue checks for the Three and 00/100 Dollars ($3.00) cash payments.

(c) **Credits for Non-AT120+ Customers.** DISH shall provide to each Non-AT120+ Customer, pursuant to the procedures set forth in Section 4 of the Settlement Agreement and Release, one of the following forms of settlement relief, depending on whether the Non-AT120+ Customer is a Current Customer, Former Customer, or Non-Upgradeable Customer.

i. **Non-AT120+ Customers Who Are Current Customers.** Current Customers who are neither Non-Upgradeable Customers nor AT120+ Customers will receive a Five and 00/100 Dollars ($5.00) DISH account credit if, in accordance with Section 2.6, they upgrade their core DISH programming, add a qualifying new premium package, or add or upgrade DISH Protect (Silver, Gold or Platinum) by: (i) so upgrading or adding between the Effective Date and the Upgrade Deadline; and (ii) maintaining such programming or protection upgrade through the Upgrade Snapshot Date. The Settlement Fund will not reimburse DISH for these credits.

ii. **Non-AT120+ Customers Who Are Non-Upgradeable Customers.** Non-Upgradeable Customers who are Non-AT120+ Customers will have a certificate for one (1) pay-per-view movie automatically added to their DISH accounts within ten (10) days following the Upgrade Snapshot Date. Pay-Per-View certificates, which are valid for three (3) months following the date of issuance of each such certificate, can only be redeemed on mydish.com or through DISH's automated phone system at the time of ordering. Each pay-per-view certificate is valid for one (1) Pay-Per-View (currently, channels 502-559) or Video on Demand (currently, channels 1 and 501) movie; provided, however, the value of such pay-per-view certificate will not exceed Six and 99/100 Dollars ($6.99), and cannot be used for movies rented from DISH Anywhere or DISH Movie Pack. The Settlement Fund will not reimburse DISH for this pay-per-view programming benefit.

iii. **Non-AT120+ Customers Who Are Former Customers.** Non-AT120+ Customers who are Former Customers will receive a Five and 00/100 Dollars ($5.00) credit towards re-signing with DISH by contacting DISH between the Effective Date and the Upgrade Deadline and re-signing with DISH by providing DISH the offer code that will be available on the Settlement Website. The Parties acknowledge and agree that the Settlement Fund will not reimburse DISH for these credits.

(d) **Upgrade in Programming and Protection**.

i. **Core Programming**. For purposes of Sections 2.4 and 2.5 of the Settlement Agreement and Release, to qualify as an upgrade to DISH core programming, a Current Customer would have to move from his or her then-current DISH core programming package to a then-offered[1] DISH core programming package (or its successor package) on a higher numbered tier as reflected on the following chart:

| Tier | General Market | Latino |
|---|---|---|
| 5 | America's Top 250 | DishLATINO Max |
| 4 | [DISH America Silver], America's Top 200 | DishLATINO Dos |
| 3 | [DISH America], America's Top 120, America's Top 120+ | DishLATINO Plus |
| 2 | Flex Pack; Smart Pack | DishLATINO Clásico |
| 1 | Welcome Pack | DishLATINO Básico |

ii. **Premium Programming**. For purposes of Sections 2.4 and 2.5 of the Settlement Agreement and Release, to be a qualifying upgrade in premium programming, a Current Customer would have to add to his or her DISH account an HBO, Cinemax, Starz or Showtime package that was not attached to his or her account on the Effective Date.

iii. **DISH Protect**. For purposes of Sections 2.4 and 2.5 of the Settlement Agreement and Release, to be eligible for the Five and 00/100 Dollars ($5.00) account credit, a Current Customer who does not have DISH Protect would need to purchase any level of DISH Protect (Silver, Gold, or Platinum), while a Current Customer who already has DISH Protect

---

[1] The DISH America and DISH America Silver programming packages are no longer offered.

7
Case 2:11-cv-04035-NKL   Document 500   Filed 05/24/18   Page 7 of 9

Silver would need to upgrade to either DISH Protect Gold or DISH Protect Platinum, and a Current Customer who has DISH Protect Gold would need to upgrade to DISH Protect Platinum.

14. Plaintiff Padberg, the Classes, and/or Defendant may seek to enforce the provisions of the Settlement Agreement and Release by motion to the Court pursuant to the Court's continuing jurisdiction over the Settlement Agreement and Release as set forth in Paragraph 21 below.

15. The Court awards to Plaintiff $15,000 to be paid from the Settlement Fund as an Incentive Award for his role as representative of the Classes.

16. The Court awards to Class Counsel, as attorneys' fees and costs, the amount equal to the amount remaining in the Settlement Fund following the payment/reimbursement of the following as set forth in the Settlement Agreement and Release: (i) certain monetary relief and account credits as set forth in Sections 2.4 and 6.2; (ii) any Incentive Payment, as set forth in Section 2.9; (iii) the costs and expenses of Class Notice, as set forth in Sections 3 and 6.1; (iv) the costs and expenses associated with maintaining and administering the Settlement Website, as set forth in Section 3.1(c); and (v) the payments for the services and expenses of the Claims Administrator, as set forth in Section 4.3. Prior to any payments to Plaintiff Padberg or Class Counsel, DISH shall be reimbursed from the Settlement Fund: (1) the amount representing $5 for each AT120+ Customer who was on the Credit Claimant List and received a $5 account credit from DISH, as set forth in the Settlement Agreement; and (2) any and all costs and expenses incurred in connection with the Class Notice, including sending the Class Notice via email, in an amount not to exceed $15,000.00.

17. The provisions of this Final Judgment are applicable to and binding upon and inure to the benefit of each party to the *Padberg* Action (including each member of the Classes and each of Defendant's successors and assigns).

18. To the extent permitted by law and without affecting the other provisions of this Final Judgment, this Final Judgment is intended by the Parties and the Court to be *res judicata* and to prohibit and preclude any prior, concurrent, or subsequent litigation brought individually, or in the name of, and/or otherwise on behalf of the Plaintiff Padberg or any member of the Classes or

8

Case 2:11-cv-04035-NKL   Document 500   Filed 05/24/18   Page 8 of 9

any others similarly situated in the United States with respect to the Released Claims based upon the same alleged facts at any time prior to the date of the Preliminary Approval Order.

19. The provisions of this Final Judgment are entered as a result of a voluntary agreement of the Parties. The Settlement Agreement and Release and this Final Judgment are not intended to, and shall not be construed as any admission, express or implied, of any fault, liability or wrongdoing by Defendant, or any other party or person, or of the accuracy of any of the allegations in the Complaint or Defendant's defenses.

20. Save and except as expressly set forth to the contrary in this Judgment and any judgment issued by this Court regarding Plaintiff's Counsel's fee application, Plaintiff Padberg and Plaintiff's Counsel shall take nothing by their claims and each party shall bear his or its own fees, costs, and expenses in connection with the *Padberg* Action.

21. Jurisdiction is retained by this Court for twenty-four (24) months following the Effective Date for the purpose of enabling any party to this Final Judgment to apply to the Court at any time for such further orders and directions as may be necessary and appropriate for the construction or carrying out of this Final Judgment and Settlement Agreement and Release, for the modification of any of the provisions hereof, for enforcement of compliance herewith, and for the punishment of violations hereof.

22. Based upon the Court's finding that there is no just reason for delay of enforcement or appeal of this Order notwithstanding the Court's retention of jurisdiction to oversee implementation and enforcement of the Settlement Agreement and Release, the Court directs the Clerk to enter final judgment pursuant to Federal Rule of Civil Procedure 54(b).

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: May 24, 2018
Jefferson City, Missouri